Mata Chowdhury Inc. versus City of Boynton Beach. I'm here on behalf of the plaintiffs in this case, the appellants in this case. This case is regarding the First Amendment and the 14th Amendment regarding the nuisance ordinance that was implemented by the City in 2017. This case reminds me of a federal jurisdiction exam. I'll tell you, I'm concerned about whether your clients have standing to assert the First Amendment rights of their customers. It seems to me that your argument is that the nuisance code chills the guest's First Amendment right to call 911. But if that happens, it doesn't injure your client. That is, if they don't call 911, that doesn't cause an injury to your clients. If they do call 911, that potentially does cause an injury to your clients. But the problem is, then their First Amendment rights haven't been chilled. It seems to me you have a big standing problem because if you're depending on the hotel cast's First Amendment rights having been chilled, that doesn't cause your clients an injury. I understand what you're saying, Your Honor. This issue of standing was addressed in the beginning of the case at the district court level. Yeah. I just don't think the district court got it right. Oh, okay. Respectfully, Your Honor, the standing issue, I can address many cases for you that I've addressed in the brief regarding prudential standing in First Amendment cases where it doesn't need to be the hotel that's being chilled. It could be any part of the thing. Oh, I know that. I know you can depend on a third-party standing. I get that. Okay. But the problem is, it has to be that whatever third-party's First Amendment rights are being injured causes your client an injury. And it seems to me the problem you have is you're only injured if they exercise their First Amendment rights. That's true. We are only, when they exercise their- That's not a problem. When they actually- See, then their First Amendment violation actually benefits you. If they don't call 911, that's good for you. Right. If they don't call 911, then the hotel would not get dinged. You're not injured. When they do call 911, the hotel does get dinged, but it's not only the guests. It's also the, first of all, the city has not been able to produce who were the 911 callers. They have not been able to produce the 911 inquiries. I don't know what that has to do with what I'm worried about. So let me give you an example about third-party standing. I used to use, this is in the case book for federal courts that I used when I taught the course in law school, okay? Are you familiar with the Supreme Court case where Oklahoma passed a law that required a different drinking age for males and females involving low alcohol beer? So the beer vendors, the sellers of beer complained because young males had to be 21 to buy low alcohol beer when girls could buy it at 18, okay? What that meant is that the beer sellers sold less beer because of the equal protection violation to the males, okay? But see, the equal protection injury to the males, the third parties, caused the beer sellers an injury, too, as an identity there. The problem you have is that what you say your hotel guest injury is doesn't cause your client an injury. They're only injured if they don't call, and if they're chilled not to call, which helps you. See, I don't think you can use third-party standing. You see my point? But I also addressed the front desk clerk that said that she was, based on the sign that was placed on the window by the city, that she was chilled from, scared to call 911, wasn't sure what the sign meant. Okay, so she doesn't call 911, okay? That's good for your client. It's under the nuisance code. They're not going to get dinged. But why would any city want to punish somebody, punish a property owner for calling 911? I mean, these are, these were not... That's not my concern. I first got to decide whether this case is justiciable, that is, whether your clients have an actual or imminent injury that we can, that we have, you know, the jurisdiction to consider. And it seems to me that the injury that you're alleging on the part of the hotel guest, being chilled, doesn't cause your client an injury. So you can't use third-party standing. You see my point? I see what you're saying, Your Honor. I mean, I would just have to rely on the cases that I cited in the brief. Couldn't you have argued, or did you argue, that guests were less likely to stay at the hotel if they felt that they couldn't call 911? I did argue that at the district court level, and there was confusion as to the sign. Yeah, the problem with that, though, is that's not a constitutional violation. So if the guest, or it's one thing that you, what you did was you framed the third-party standing, I think I understand why, as a First Amendment violation. So the guests were chilled in their First Amendment rights. But if the guests just choose not to go to your hotel, that's not a constitutional violation. Correct. That's not a constitutional violation. But it is an injury for the hotel, right? Yes. It causes loss of reputation, goodwill, loss of income, so forth. Yeah, but it doesn't involve a federal constitutional violation for the third-party standing purposes for the hotel guests. The fact that they just choose not to stay there. Correct. The other issue in this case is the due process, and I only have a few minutes left. So — There's a lot of issues in this case. I mean, you've got a pending state court proceeding, as I understand it. Well, I can address that right now if you'd like. Okay. That'd be great. No, the pending state court, the state court proceeding is complete. The appellate court — it was the circuit court in their appellate capacity PCA-ed the decision made by the magistrate, the city's magistrate. And I know you — I read the instructions that were issued by this court. The hotel was not able to make any constitutional arguments at the magistrate level. Not able to or didn't? We weren't able to. There was no pleadings, no motions that could be filed. It was a single person. It was like a code compliance arena that — where this case was heard. And if you — Is there any — Go ahead. Is there any case law or, you know, statute to regulations that we can look at that show us how that works, of which we can take judicial notice, so we can understand that? On the December — like, in the record, 90-2 is the meeting minutes from December 19, 2018. And you can see what the special magistrate said as to, like, what she could consider and what she could not consider. She said this was a limited review and that either she was going to determine whether or not the city was correct in declaring the property a nuisance and whether or not the city had met the definition of declaring us a nuisance. It was not a full-blown — there was no discovery. There was no motions. There was no pleadings. There was nothing that could have been — I couldn't argue constitutional — How do I know that? Is all of that in this record? Yeah. In 90-2? I mean, it's the meeting minutes from that — the hearing on December 19, 2018, when we had signed the nuisance agreement under duress, and the judge had — or not the judge, the special magistrate had said to us that you cannot sign it under duress. You have to sign it without reservation because that's what the city wants. All of that is in the meeting minutes. And I've pled that also in the brief and in the complaint and in various times throughout this case, that there was no — I didn't have an opportunity to argue constitutional — make any constitutional arguments. So that's the — walk me through. That was the special magistrate, and then you could or could not appeal that decision? I did appeal that decision to the Palm Beach Circuit Court, and they said — and I tried to make the constitutional arguments there in my initial brief and my reply brief. The city filed a motion to strike those arguments because they were — filed a motion to strike those arguments, and the court — the circuit court granted the motion to strike those arguments. What was the — what was the basis for the city's motion? Because the appeal was — the appeal, first of all, is limited, and second of all, those arguments were not made. Like due process arguments and First Amendment arguments were not made in front of the special magistrate. I obviously could not make a due process argument in front of the special magistrate, but I did not make a constitutional argument because, again, there would — there was no discovery. There was no motions, no pleadings that were filed. It was — OK. I don't know what the rules are in Florida. I know in Georgia, in an administrative proceeding, the administrative body doesn't have the authority to decide any constitutional questions, but parties are responsible for raising them there to preserve them, and then once the matter makes it to an actual state court, they've been preserved and the state court can consider those. Do you know if there's any sort of rule, one way or the other, like that in Florida? No, I don't know, and I've not seen — I mean, I've done a lot of research on this case, and I've not seen any case like that that says that I've waived any of my arguments regarding constitutional review. Even in the — I know I'm over my time, and I'm sorry — You're answering our questions. OK. Sorry. Sorry. OK. The — like, even in the duress agreement, or the nuisance abatement agreement, the initial nuisance abatement agreement that my clients had signed, I had signed on their behalf. At the bottom of that agreement, I wrote that we were signing this under duress and we wanted this agreement to be subject to a constitutional review, to review judicial review because of the constitutional issues. So that was the only time I could have — I actually wrote it out, but the city is aware that I had constitutional issues from the beginning of this case. Like, when I met the city before the federal case started, before the city's case started — when the city's case first started against us, they asked me to come to meet with them, and that's — and I raised constitutional issues there. But anyways, I'm sorry. I'm going over my time. No, no, no. Don't worry. You're answering our questions. You're answering our questions. And we'll give you all your rebuttal time. OK. Which — I say that to comfort you because I have another question. So after you received the judgment from the Palm Beach Circuit Court, is there an opportunity for — is or was there an opportunity for further appeal? There was — I mean, I could have — I don't — I mean, I think I would have had to appeal it to the Supreme Court. I don't think I could have gone to the 4th D.C. I think I would have had to appeal it to the Supreme Court. But you could have gone to the State Supreme — there was at least some appellate court review available? I believe I could have gone to the State Supreme Court. But again, the record at the — Let me ask you this, Michelle. Did you argue in the Palm Beach Circuit Court that, in fact, you had a right to make the constitutional arguments in response to what the city filed? I did. In the briefs, I did. Yeah. And you could have made that argument, too, then on appeal, but didn't? In the briefs that were filed in the Palm Beach Circuit Courts, that's where I made the constitutional arguments. But since they were not made at the — At the special magistrate. At the — in front of the special magistrate at the code compliance arena, I — the city moved to strike those arguments and the court granted them. I understand that. Yeah. You're — I understand that. Okay. My only question was that when the city moved to strike that, you argued that you were, in fact, entitled to make those constitutional arguments. Is that right? Yes. And you could have said to either the state supreme court or the DCA, whichever would have jurisdiction for appellate review, you could have said it was error to strike that. I mean, honestly, based on the law that I saw, the record is — the appellate record was limited as to — the appellate court, in their capacity, could only review what was — It's a simple question, Ms. Shaw. I just wanted to know, you could have made that argument to the state supreme court or to the Florida DCA. I could have made that argument, but I don't think that court would have also bought that argument because the appellate court is bound by what's — the record before it. And the record before it was very limited.  In front of the special — You've got a — either way, you've got a final judgment now, right? In state court. It's a piece — yeah, it's a PCA. So yeah, the — When you say PCA, what does that mean? Per curiam affirmed. Okay. Per curiam affirmed. Well, just what we would call it. Okay. Thank you. We're — let's hear from Mr. Cirillo. Good morning, Your Honors. I may please the court. Michael Cirillo with the City of Boynton Beach. You see where I'm going with standing? I do. And I just want to say one thing. Your orders that we received on August 1st and September 8th were a lesson to all of us appellate practitioners to not get so focused on the merits of what you get that you miss the foundation of jurisdiction and standing. Yeah, well, I always pay attention to it, so — Right. Well, I overlooked it, and I regret that, and I wanted to address it head on, so I apologize, and we'll get right to the point. The due process issue that was brought to our attention on August 1st — Let's go in reverse order. Okay. Let's start with what I raised — Yes, sir. — to you a moment ago, which is standing. Yeah, I think — I agree with you that, you know, looking at the cases that were presented, I don't see where the injury was to the hotel. If someone calls 9-1-1 and asks — Well, it has to be a constitutional violation — That's correct. — to the third party that causes an injury to the hotel, and, in fact, if the constitutional violation that they allege to the hotel guests, in fact, benefits the hotel. Yes, I do. So I agree with that. I think there's a problem with standing on that theory. I don't want to, you know, belabor that, but I agree that if someone calls 9-1-1 and they've exercised their rights, they've not been chilled, and there's been nothing in the record to show that anybody was chilled. And the hotel is only injured if they do call 9-1-1, right? Yes, sir. At least under the nuisance abatement ordinance, if they don't call 9-1-1, they might have other issues, but not constitutional. The due process issue that you raised, just candid to the court, I am a special magistrate for a city, a different city, Weston, so I do handle cases like that, and it gets to what I was going to say with abstention as well. I'm not sure I view it akin to criminal in all the years I've done it, but I could see there's similarities between the facts in this case and the Hoffman case. The law in Florida is that you raise the issues at the magistrate level, but magistrate, I cannot, for example, issue an order that finds an ordinance of the city of Weston unconstitutional. I can hear the arguments, I can allow folks to make the record, but the circuit court can do that. There's case law in Florida that says the circuit court can handle constitutional issues. Can you tell us what that authority is? I mean, where can I look to know? So that sounds a lot like what goes on in immigration cases in our system, so sometimes a constitutional argument, a due process argument, something like that is made before either the immigration judge, the Board of Immigration Appeals, and they don't address it, but it's preserved and then it can be raised before us, and then you don't have a failure to exhaust problem. Can you tell me where in Florida law I would know that that kind of preservation was available, and then the appellate review would have been available on the constitutional claims? Sure. The statute 162.11, which provides for appeals of code enforcement magistrate orders, provides that an appeal shall not be a hearing de novo, but shall be limited to appellate review of the record created before the enforcement board. Now the statute allows enforcement board and magistrate to be interchanged, so the statute specifically says that when you go to circuit court, that review is limited to the record that was developed before. Yeah, but that doesn't tell me whether you could have raised the constitutional issue for issue preservation purposes at the special magistrate level. Are there cases that say that you could do that, and that your failure to do that then deprived the Palm Beach Circuit Court, for example, from considering it? I don't know if I can point to any specific case. I mean, as just appellate law that I would look at for preservation, and I've cited, I think there's a fourth DCA case, West Palm Beach Board of Planning and Zoning or something like that. I don't have the site, excuse me for that, that talks about preservation to get to circuit court. It's not a constitutional issue that I could recall as preservation. Both sides, if y'all have some law about this, some Florida law, it's kind of frustrating to send questions to counsel before oral argument, and then be told when we get to oral argument, oh, I don't know of any case, I don't know what the site of that case is, you know. I understand. Okay. But two weeks. Two weeks from today, if there's any Florida case law, statutory authority that would help us know that, give us a letter, a 28-J letter that provides us some help on that. Okay? Yes, sir. But there is, again, to go on to the further part, and I guess we can cite some authority for that as well, but the right to appeal is to the 4th District Court with the writ of certiorari. If so, if the circuit court didn't properly handle the due process, didn't grant the appellant due process, didn't follow the essential elements of law, then they could file a certiorari to that, to the 4th District Court of Appeal. Thank you. I don't know if you want me to go into any of the arguments in the brief, fully brief the merits. I don't know if you have any questions on it, but our position has been that this ordinance does not really go towards a speech, and if it did, it was minimal necessary to affect the interest of the government to address these nuisance issues. I don't know if you have any questions on the brief or the merits, but otherwise I'd leave my time. Any questions? Okay, thank you, and we'll get that 28-J to you. Thank you. Thank you. Ms. Shaw, you've saved five minutes. Ms. Shaw, you've saved five minutes. I'm ready. Okay. Your Honor, your Honors, I just wanted to say I will address the standing, or the issue that the 28-J issue within two weeks, whether or not it was a requirement for me to raise constitutional arguments in front of the special magistrate. With respect to the instructions that were sent to us, your Honors, the prosecution was complete when the federal suit was filed, therefore it would not have been improper for the federal court, even though they didn't grant the preliminary injunction, it would not have been improper for them to grant the preliminary injunction because the state prosecution was over. We were in the appellate phase at that time. Moreover, I mean, I've said this many times in the brief, and I know this is not going to address your standing issue, but to punish a property owner for 911 calls that were made in an emergency just seems utterly ridiculous to me. And the facts that were in the answer brief did not match with the record evidence. There was no document, there was no record evidence that when the 911 operator, the ambulance driver came onto the scene, he was the one that determined whether or not there was an actual overdose happening. I mean, when we deposed the city's employees, they weren't even, one of the city's employees was not even sure if 911 even reported to each and every call that the property owner was cited for. What if the ordinance, instead of counting 911 calls, counted overdose reports on a particular property as part of its nuisance analysis? Would that be a speech problem? No, that's a conduct problem, but how can the city, how can the property owner prevent somebody or stop somebody from doing something in their hotel room? We would have no control over what somebody is doing voluntarily inside their own hotel room. To declare a property a nuisance, place it on the title, cloud the title for the last three years, has been a real struggle for this property. And there's nothing we could have done to prevent these 911 calls. There's nothing we could have done to stop somebody from taking something that they decided to take of their own volition. And the- So it's just a coincidence that some hotels have drug markets and rampant drug taking and others don't? But there's- I mean, that's what the city's concern is, right? Is to put the property owners in control as the folks on the front line of what happens on their properties. And to, you know, take some responsibility to ensure that it doesn't become a drug market. I understand what the city is, what the city is, their intention may be, but that's, what they're, by declaring the property a nuisance is not going to achieve or prevent somebody from overdosing in a hotel room. Whether that's true or not, I mean, we're not here to review whether it's a good law or bad law. The concern we have to be is whether there are federal constitutional problems. And even before that, whether the alleged federal constitutional problems actually are causing an actual or imminent injury that gives you, that gives your client standing to invoke our jurisdiction. Correct. And I mean, like, I will address the standing in the 28-J letter, I mean, not standing, but to see if a requirement was, there was a requirement for me to address constitutional arguments at the special magistrate level. But again, Your Honor, I've addressed standing as much as possible I can in the brief and then the reply brief and at the district level. One of the problems I have is that no matter almost how, what you find about the law in your complaint, it doesn't appear to me in your complaint that you allege that there was no state process that could remedy an erroneous deprivation. And you're required by our case law, by McKinney and that line of authority, to allege that. And it appears to me you didn't. To allege that there's a deprivation of? To allege that there's no state process available that could remedy any erroneous deprivation. But there, I, I mean, but there was no way that, that the special. You got to allege that in your complaint is what I'm saying, Ms. Shaw, and I'm concerned that you didn't. Okay. Okay. You see where I'm coming from? Yes. I see what you're saying.  Does the court have any other further questions? I only have one second. Do you have anything further that you want to say? Uh, no. I don't have anything further. Okay. Uh, thank you. Uh, y'all have got two weeks to give us some supplemental authority and, uh, we appreciate it. Thank you. We'll move to the last case.